## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DAVID CHERRIE, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | Civil Action No. **3:24-cv-2921** |
| v. | § § | |
| DITCHEY GEIGER, LLC, THOMAS J. DITCHEY, and RICHARD S. GEIGER | § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT – CLASS ACTION

Plaintiff, David Cherrie ("<u>Plaintiff</u>"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, alleging upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, bring this Complaint against Defendants Ditchey Geiger, LLC, Timothy J. Ditchey, and Richard S. Geiger (collectively, "Defendants"). In support, Plaintiff alleges as follows:

1. This action seeks class-wide relief pursuant to the (collectively, "<u>Defendants</u>") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (the "FDCPA") for the unlawful, unfair and deceptive conduct of law firm Ditchey Geiger, LLC, and its attorneys Tim Ditchey and Richard Geiger. Plaintiff brings this action to redress Defendants' routine practice of sending

"debt collection" letters to Texas residents despite the non-existence of the very "debts" for which they purport to seek collection.

2.    Defendants' letters violate the FDPA in at least two ways. First, Defendants' letters failed to properly identify the purported debt, thereby obscuring Plaintiff's assessment of the claims asserted therein and impeding Plaintiff's defense.  This conduct violates subsections §§ 1692e's prohibition against false or misleading representations and § 1692f's prohibition against the use of unfair or unconscionable means to collect or attempt to collect any debt. Defendants' conduct, and such additional FDCPA violations as may be identified through discovery, caused Plaintiff damage, including but not limited to emotional distress.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FDCPA.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiffs and Defendants reside and/or do business in the Northern District of Texas. Venue is also proper in this District because the acts and transactions that give rise to this action occurred, in substantial part, in the Northern District of Texas.

## PARTIES

5.    Plaintiff is a natural person residing in Sunnyvale, Texas.

6.     Plaintiff is a "consumer" as defined by FDCPA § 1692a(3), with Defendants having alleged that Plaintiff is obligated to pay a "debt" to which the FDCPA applies.

7.     Defendant Ditchey Geiger, LLC ("DG Law") is an Ohio Limited Liability Company.   DG Law regularly uses instrumentalities of interstate commerce in attempt to collect debts owed or due or asserted to be owed or due another.

8.     Defendant Timothy J. Ditchey ("Mr. Ditchey") is an attorney and partner at DG Law.  He regularly uses instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

9.     Defendant Richard S. Geiger ("Mr. Geiger") is an attorney and partner at DG Law.  He regularly uses instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

10.    DG Law, Mr. Ditchey, and Mr. Geiger are each "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

11.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

12.    The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  15 U.S.C. § 1692(e).  These objectives emerged from Congress's express recognition that abusive, deceptive, and unfair debt collection practices contributed to numerous societal harms, namely personal bankruptcies, marital instability, job losses, and invasions of individual privacy.  15 U.S.C. § 1692(a).

13.     In furtherance of its purpose, the FDCPA broadly prohibits the use of "false, deceptive or misleading representation or means in connection with the collection of any debt" and the use of "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. §§ 1692f, 1692e.

14.     "Without limiting the general application of the foregoing," the FDCPA specifically prohibits, *inter alia*, misrepresentations of the "character, amount, or legal status of any debt" and the use of "false information or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer."  15 U.S.C. §§ 1692e(2)(A), (10).

15.     Section 1692e's non-exhaustive list of deceptive or misleading acts also expressly prohibits debt collectors from threatening to take any action that cannot legally be taken or that is not intended to be taken, from falsely representing or implying that any communication is from an attorney, and from creating a false impression as to the source, authorization, or approval of a written communication.  15 U.S.C. §§ 1692e(3), (5), (9).

16.    Violations of the prohibitions set forth in § 1692f and § 1692e are determined from the perspective of an unsophisticated or least sophisticated consumer, consistent with the FDCPA's overarching consumer protection objectives and in furtherance of maintaining objective standards independent of subjective consumer interpretations.    In harmony with this standard, a communication is generally deemed deceptive for purposes of the FDCPA if it can be reasonably read to have two or more different meanings and one of those meanings is inaccurate.

**DEFENDANTS' VIOLATIONS OF THE FDCPA WITH RESPECT TO PLAINTIFF**

17.    Defendants first contacted Plaintiff by way of paper-mailed correspondence dated September 22, 2023, which purported to issue a "Notice of Claim" and "FDCPA Consumer Notice" to Plaintiff (the "Consumer Notice"). The Consumer Notice was sent to Plaintiff's home in Sunnyvale and addressed to "Cherrie David Arthur."[1]

18.    As with Defendants' subsequent mailings to Plaintiff's home, the Consumer Notice was printed on DG Law's letterhead, prominently representing that the letter was from a law firm, and purported to have been signed by DG Law's named partners, Defendants Timothy J. Ditchey and Richard S. Geiger.

19.    The substance of the Consumer Notice that Defendants sent to

---

[1] While it is possible that the the jumbling of Plaintiff's names was an intentional Last Name, First Name Middle Name format, Defendants' subsequent correspondence with Plaintiff tend to suggest otherwise; so too do similar consumer notices that Defendants issued to other Texas residents.

Plaintiff is reproduced in relevant part below:

---

Attention: Cherrie David Arthur

Client: Texas Farm Bureau
Client File No. 100220987
DG File No. 23-469866
Type of Claim: Subrogation
Date of Claim: 05/30/2023
Claim Amount: $17,171.63

### NOTICE OF CLAIM

The above captioned matter has been assigned to this law firm for collection. Please forward payment of the claim amount listed above.

FDCPA Consumer Notice:
This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  Unless you, within thirty days after receiving this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by this office.  If you notify this office in writing within the thirty-day period that the debt, or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you and copy of such verification or judgment will be mailed to you.  Upon your written request within the thirty-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Financial Responsibility Notice:
For claims relating to traffic accidents, violation of applicable Motor Vehicle Financial Responsibility Laws may result in State imposed penalties to include the suspension of driving and/or registration privileges.  Please provide any valid insurance policy/claim that may cover this loss.

Respectfully,
**DITCHEY GEIGER, LLC**                    Account Representative: Resolution Team
/s/ Timothy J. Ditchey                                            216.348.9700 x101
/s/ Richard S. Geiger

| **CONTACTS** |
|---|

 Monday - Friday 8:30 AM – 5:00 PM ET
24 Hour Voicemail Attendant
Tel: 216.348.9700 • Fax: 888.232.1934

 DITCHEY GEIGER, LLC
7123 Pearl Road - Suite 400
Cleveland, OH 44130

 Pay Online:
www.DitcheyGeiger.com

Please tear off and return lower portion with payment in the envelope provided.

---

20.    The lower portion of the one-page Consumer Notice (along with Defendants' subsequent mailings to Plaintiff's home) was reserved for Plaintiff to handwrite and mail his credit card details to Defendants upon request:



21.    The second communication Defendants made to Plaintiff was a letter dated October 23, 2023 (the "Second Collection Letter")—just one day after the lapse of the thirty-day period referenced in Defendants' Consumer Notice dated a month earlier.  *See supra* ¶¶ 22 ("FDCPA Consumer Notice.  This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  *Unless you, within thirty days after receiving this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed valid by this office*.").

22.    The Second Collection Letter again jumbled Plaintiff's name, referring to him as "Cherrie David Arthur," again indicating that the letter was from a law firm and authored by attorneys, and again instructing Plaintiff to mail his credit card information to DG Law.

23.    The Second Collection Letter differed from the initial Consumer Notice with respect to its core narrative text, copied below:

> This claim remains unpaid with the outstanding amount listed above.  Please do not disregard our efforts to resolve this matter.  If you are unable to submit payment in full, contact our office immediately to discuss an acceptable payment plan.  Payment plans are determined by assessing your financial situation and your ability to pay.  A past credit history is not needed to qualify for a monthly payment arrangement.
>
> Your failure to either remit the claim amount listed above or enter into a satisfactory payment plan may result in legal action.  Your prompt response is important.
>
> **THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

24.    Notably, the Second Collection Letter treats the alleged "debt" as "outstanding," instructs Plaintiff to contact DG Law's office to enter into a payment plan, and threatens that Plaintiff's failure to "either remit the claim amount . . . or enter into a satisfactory payment plan may result in legal action." In closing, the Second Collection Letter reiterates that DG Law is a debt collector and that Defendants are attempting to collect a debt.

25.    Two weeks after issuing the Second Collection Letter, on November 7, 2023, Defendants mailed yet another letter to Plaintiff, which Defendants captioned as their "Final Notice" to Plaintiff.  This Final Notice largely tracked the form of Defendants' prior debt-collection mailings to Plaintiff—again jumbling Plaintiff's name, again indicating that the letter was from a law firm and authored by attorneys, and again instructing Plaintiff to mail his information to DG Law.

26.    A copy of the Final Notice's core narrative text is produced below:

---

**FINAL NOTICE**

Unfortunately, our several attempts to resolve this matter with you have failed. If arrangements are not made to satisfy this claim, we will advise our client that payment is not anticipated. At that time, our client may wish to further pursue this matter through litigation. If our client seeks collection through litigation and obtains a Judgment, you may be responsible for additional costs, expenses, and interest. If this matter is applicable in your jurisdiction, our client may seek garnishment of any non-exempt wages.

This is your Final Notice to submit payment in full or make arrangements to enter into a scheduled payment plan. Contact our office immediately or submit payment within ten (10) days.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

---

27.    Building on the warnings and representations set forth in the Second Collection Letter, Defendants double down in their Final Notice on their threats to seek "collection" through litigation by alleging that Plaintiff may be responsible for additional costs, expenses, and interest, and further threatening that "whatever you own in excess of your legal exemptions may be levied upon and sold" as a result.

28.    Defendants' so-called Final Notice likewise doubles down on their representation that they are attempting to collect a debt and again self-identify as debt collectors. In addition to mirroring the Second Collection Letter, these representations build on Defendants' first issued Consumer Notice, in which Defendants represent that they seek to collect consumer debt obligations governed by the FDCPA and that, as such, they are entitled to treat Plaintiff's purported debt obligation as valid upon not hearing back from Plaintiff within thirty days.

29.    Upon receiving the initial Consumer Notice from Defendants, Plaintiff investigated whether it was legitimate or a scam.  All signs pointed to the latter.

30.    As an initial matter, the Consumer Notice failed to properly state Plaintiff's name and Plaintiff did not recognize the alleged debt.  Nor did Plaintiff recognize the "Client" identified at the top of the letter, *i.e.*, Texas Farm Bureau, an organization with the stated mission of being "the Voice of Texas Agriculture."[2] Plaintiff's investigation into DG Law likewise raised red flags, with the top search suggesting it might be "a scam artist posing as a lawyer."  Plaintiff's investigation into DG Law raised red flags, with top search results suggesting it might be "a scam artist posing as a lawyer."  The Consumer Notice also matched patterns that consumer protection resources identify as typical of scams seeking sensitive financial information.[3]  Put simply, Plaintiff had no reason to believe after exercising reasonable diligence that Defendants' correspondence was not a paper-mail phishing attempt.

31.    Upon receiving the Second Collection Letter, however, Plaintiff grew concerned.  While he still had no basis to believe he owed the debt that Defendants

---

[2]    Texas Farm Bureau, "Agriculture. Texas. America," *available at* https://texasfarmbureau.org/voice-of-texas-agriculture/ ("Our Mission: Texas Farm Bureau's mission is to be the Voice of Texas Agriculture.") (last accessed Nov. 20, 2024).

[3] *See, e.g.,* CFPB, "How do I tell if a debt collector is legitimate or a scam?", *available at* https://www.consumerfinance.gov/ask-cfpb/how-do-i-tell-if-a-debt-collector-is-legitimate-or-a-scam-en-1699/ (stating that a debt collector asking for personal financial information is a warning sign of a debt collection scam and advising consumers to "never provide anyone with your personal financial information unless you are sure they're legitimate") (last accessed Nov. 20, 2024).

purported to collect, the fact that the Second Collection Letter was dated precisely one day after the thirty-day FDCPA period raised concerns about the purposefulness of the timing. Plaintiff's further investigation into the FDCPA's thirty-day period then raised additional concerns with respect to the effect of the lapse of that period in the context of consumer debt collection—giving rise to additional concerns with respect to his potential legal exposure, liability, and ability to verify or dispute those potential liabilities.

32.     Notwithstanding his then-ongoing doubts as to the provenance of the Consumer Notice and Second Collection Letter, Plaintiff's further investigation into DG Law, prompted by his reasonably unanticipated receipt of the Second Collection Letter, revealed that DG Law was a debt collector with a long list of negative reviews complaining about their collection practices—with some reviewers stating that the DG Law had made unauthorized charges against their accounts even after those reviewers entered into a payment plan with DG Law.

33.     Plaintiff reasonably believed that the DG Law attorneys must have had some factual basis, albeit erroneous, for asserting that he owed an FDCPA-covered debt. However, since the initial Consumer Notice invoked FDCPA provisions and the 30-day dispute period had passed, Plaintiff felt he could not effectively verify or dispute the debt with Defendants. This led to concerns about his lack of formal recourse to challenge the alleged debt.

34.     Defendants' correspondence lacked an email address for efficient communication, providing only a mailing address, fax number, and telephone

number. Calling DG Law, however, seemed unwise given the increasingly aggressive tenor of their collection efforts and Plaintiff's concerns about an impromptu discussion with a lawyer who seemed to have already placed him in a disadvantageous legal position under the FDCPA and had begun threatening legal action.

35.    Plaintiff's financial situation was already precarious as a self-employed business owner without a consistent income. He had recently spent over $25,000 to fix faulty contracting work on his new home, and money was tight. The unexpected demand for over $17,000—a debt Plaintiff never believed he owed—caused Plaintiff to suffer mental anguish and represented painful setback at a time when Plaintiff's top priorities were developing his business and establishing a stable foundation for him and his wife.

36.    The idea of choosing between (a) defending a lawsuit at a time when he could not afford to meaningfully engage an attorney and (b) agreeing to a payment plan that he could not afford, on the other, greatly distressed Plaintiff and left him unable to focus on his business or personal life at a time when those priorities felt most important.

37.    Just a couple weeks after receiving the Second Collection Letter, Plaintiff's distress intensified when he received the "Final Notice" threatening legal action, wage garnishment, and other severe consequences against him. Having already begun the process of assessing his options and searching for an attorney who was willing and able to assist given his circumstances, Plaintiff was

finally able to make adequate arrangements. Plaintiff's counsel disputed the claim on November 17, 2023, in correspondence sent via fax.

38.    Three days after Plaintiff's counsel disputed the consumer debt obligations that Defendants had been pursuing for months, Defendants revealed for the first time that the claim they had aggressively pursued "was not a debt but a tort claim."

39.    Having been pressed by Plaintiff's attorney, Defendants switched justifications for their collection efforts, stating that "this claim is not related to a consumer debt resulting from a transaction. Rather, our client's claim is a subrogation claim arising from a civil tort or other non-consumer related matter."

40.    Defendants then went on to disclose that they were attempting to collect over $17,000 based on allegations that Plaintiff "had a big load of gravel/sand that was in the road that was similar in color of the road" that Defendants' client's insured drove into.

41.    Defendants made affirmative efforts to conceal their lack of any legitimate basis for asserting that Plaintiff owed a consumer debt. Specifically, Defendants repeatedly misrepresented the nature of the claim as one governed by the FDCPA, invoking statutory language and procedural requirements designed to mislead Plaintiff into believing that the purported obligation arose from a valid consumer debt. These efforts included falsely asserting that the purported debt would be "assumed valid" if not disputed within thirty days, despite knowing that

no such consumer debt existed and that they were not legally permitted to rely on this presumption.

42.     Defendants also withheld critical information about the true nature of the claim and failed to provide any documentation supporting the purported debt, despite Plaintiff's implicit rights under the FDCPA to dispute and verify the obligations.  By disguising the claim as a consumer debt, Defendants deliberately created a false sense of urgency and legal jeopardy, pressuring Plaintiff into either conceding the debt or entering into a payment plan under false pretenses.

43.     Defendants knowingly and deliberately made misrepresentations of law to Plaintiff, intending to coerce payment by leveraging Plaintiff's misunderstanding of his rights. Defendants knew they had no legal basis to assume the claim was valid, nor did they have any justification for representing the obligation as a consumer debt under the FDCPA. These misrepresentations were calculated to intimidate Plaintiff and obscure the true nature of their collection efforts.

44.     Until Defendants finally disclosed, in response to Plaintiff's counsel's dispute, that the claim was not a consumer debt but a tort-based subrogation claim, Plaintiff had no means of discovering Defendants' deliberate misrepresentations. Defendants' concealment and mischaracterization of the claim actively prevented Plaintiff from understanding the nature of the alleged obligation, the lack of applicability of the FDCPA, and the full scope of his rights.

45.    Defendants' admission on November 20, 2023, that "this is not a debt but a tort claim" was the first time Plaintiff could reasonably have discovered that Defendants had knowingly misrepresented the nature and validity of their collection efforts for months.  Prior to this admission, Defendants' repeated reliance on FDCPA language, combined with their aggressive threats of legal action and wage garnishment, led Plaintiff to believe that they were asserting a consumer debt based on a mistake of fact.

## CLASS ALLEGATIONS

46.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

47.    Pursuant to Fed. R. Civ. P. 23, this action is brought as a class action on behalf of one class and at least two subclasses, defined based on information currently available. Plaintiff tentatively defines the class and subclasses as follows, subject to refinement based on discovery.

48.    Class Definition:  The class consists of all Texas residents to whom Defendants sent a collection letter in the form of Exhibits 1, 2, and/or 3 within the one-year period prior to the filing of this lawsuit and who also fall into one or more of the following subclasses.

49.    Subclass 1:  Those to whom Defendants sent a collection letter in the form of Exhibits 1, 2, or 3 based on a tort-based subrogation claim.

50.    Subclass 2:  Those to whom Defendants sent a collection letter based on a tort-based subrogation claim in the form of Exhibits 2 or 3, after having

previously suggested that the purported debt would be "assumed valid" if not disputed within thirty days under the FDCPA.

51.     Subclass 3:  Those to whom Defendants sent a collection letter in the form of Exhibits 1, 2, or 3, threatening legal consequences or wage garnishment without any intent or legal ability to take such actions.

52.     Subclass 4:  Those to whom Defendants sent a collection letter in the form of Exhibits 1, 2, or 3, misrepresenting their communications as being signed or reviewed by licensed attorneys when, in fact, no such review occurred.

53.     Class Period:  The class period begins one year prior to October 23, 2024, for violations of the FDCPA.

54.     Numerosity:  The proposed class is so numerous that joinder of all members is impracticable. Defendants operate a high-volume collection practice targeting individuals in Texas, sending standardized collection letters across the state. Upon information and belief, the class includes hundreds, if not thousands, of individuals. The exact number of class members is ascertainable through Defendants' records and data.

55.     There are questions of law and fact common to the class, which common questions predominate over any issues involving only individual class members. The principal legal question is whether Defendants' use of letters in the forms of Exhibits A, B, and/or C violates 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692d.

56.    Plaintiff's claims are typical of the claims of the class members because all were subject to the same standardized collection letters and deceptive practices by Defendants. Plaintiff is a member of the Class he seeks to represent and suffered harm as a result of the same unlawful conduct.

57.    Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no adverse interests to those of the members of the Class. Plaintiff has retained counsel experienced in the prosecution of this type of class action litigation.

58.    Congress envisioned class actions as a principal means of enforcing the FDCPA. See **15 U.S.C. § 1692k**. Generally, the members of the Class are unsophisticated consumers whose rights will not be vindicated in the absence of a class action. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require. In contrast, individualized litigation would: **(a)** Create the danger of inconsistent or contradictory judgments arising from the same set of facts; **(b)** Increase the expense to all parties, a particular disadvantage because the damages suffered by individual class members may be relatively small compared to the expense of individual litigation.; **(c)** Unnecessarily burden the court system with multiple adjudications of the common issues raised by this action, thereby clogging dockets and causing

widespread delay. For all these reasons, a class action is superior to all other available means for the fair and efficient adjudication of this controversy.

## FIRST CLAIM FOR RELIEF

**Brought by Plaintiff Individually and on Behalf of the Class Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.**
*(Using false, deceptive, or misleading means in violation of 15 U.S.C. § 1692e and using unfair practices in violation of § 1692f in communications regarding the amount, character, and nature of the alleged debt)*

59.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

60.    Defendants' collection letters sent in the form of Exhibits 1, 2, and 3 failed to clearly and fairly disclose the nature of the alleged obligation, misrepresented a tort-based subrogation claim as a consumer debt, and therefore misrepresented the amount, character, and legal status of the alleged debt in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), and § 1692e(10).

61.    Defendants' failure to clearly communicate the true nature of Plaintiff's alleged obligation constitutes an unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

62.    Defendants' failure to properly identify the basis of the alleged obligation impaired Plaintiff's ability to assess the validity of the claim and mount a meaningful defense.

63.    Defendants' collection letters confused and intimidated Plaintiff by falsely asserting a legal basis for the alleged debt and by misrepresenting that the communications had been reviewed and signed by attorneys.

64.    Defendants' communications caused Plaintiff emotional and mental distress, exacerbated by the aggressive and threatening tone of the letters and the inclusion of baseless legal threats.

65.    Plaintiff was forced to consult legal counsel and expend time and resources in an effort to understand the validity of Defendants' claims.

66.    As a result of Defendants' violations of **15 U.S.C. § 1692 et seq.**, Plaintiff and the Class are entitled, pursuant to **15 U.S.C. § 1692k**, to actual damages, statutory damages, and the costs of this action, together with attorneys' fees.

## SECOND CLAIM FOR RELIEF

**Brought by Plaintiff Individually and on Behalf of the Class Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.**
*(Using false, deceptive, or misleading means in violation of 15 U.S.C. § 1692e and using unfair practices in violation of § 1692f by attempting to collect invalid debts)*

67.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

68.    Defendants violated the FDCPA, § 1692e and § 1692f, by sending consumers letters in the form of Exhibits 1, 2, and 3 that misrepresented tort claims as consumer debts and used baseless legal threats to coerce payment.

69.    Defendants' misrepresentation that Plaintiff had a legally enforceable obligation to repay the alleged debt constitutes: a false representation of the legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A); a threat to take legal action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5); The use of false representations or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10); and an unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

70.    Defendants' actions intimidated Plaintiff into believing he was about to face legal action, causing significant emotional distress and mental anguish.

71.    As a result of Defendants' violations of **15 U.S.C. § 1692 et seq.**, Plaintiff and the Class are entitled, pursuant to **15 U.S.C. § 1692k**, to actual damages, statutory damages, and the costs of this action, together with attorneys' fees.

### THIRD CLAIM FOR RELIEF

**Brought by Plaintiff Individually and on Behalf of the Class Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.**
*(Using false, deceptive, or misleading means in violation of 15 U.S.C. § 1692e and using unfair practices in violation of § 1692f by threatening to assess attorneys' fees without determining whether such fees were recoverable)*

72.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

73.    Defendants violated the FDCPA, § 1692e and § 1692f, by sending letters in the form of Exhibits 1, 2, and 3 that threatened the possible assessment

of attorneys' fees in legal actions without determining whether such fees were legally recoverable.

74.     Defendants' threats of attorneys' fees constitute: The use of false representations or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10); a threat to take legal action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5); and an unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

75.     As a result of Defendants' violations of 15 U.S.C. § 1692 et seq., Plaintiff and the Class are entitled, pursuant to 15 U.S.C. § 1692k, to actual damages, statutory damages, and the costs of this action, together with attorneys' fees.

76.     Plaintiff, individually and on behalf of the proposed Class, hereby demands a trial by jury for all issues in this case.

## PRAYER FOR RELIEF

77.     WHEREFORE, having set forth his Complaint, Plaintiff David Cherrie, individually and on behalf of the proposed Class, prays that this Court will:

78.     Certify Plaintiff's claims to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

79.     Designate Plaintiff as Class Representative and designate undersigned counsel as Class Counsel;

80.     Enter Judgment declaring that the practices complained of herein are unlawful under the FDCPA and that Defendants violated the rights of Plaintiff and the Class under the FDCPA;

81.     Award actual damages incurred by Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a);

82.     Award statutory damages to Plaintiff and the Class, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

83.     Enter judgment casting each Defendant liable for damages up to the maximum authorized by 15 U.S.C. § 1692k(a)(2)(B).

84.     Award reasonable attorneys' fees for all services performed by counsel;

85.     Award reimbursement for all costs and expenses incurred; and

86.     Grant Plaintiff and the Class any other legal and equitable relief that this Court deems just and proper.

/s/ *Patrick M. W. Arnold*
Patrick M. W. Arnold
State Bar No. 24109596
parnold@wlbofirm.com
**WALLS LANDRY BAKER & OLIVER, PLLC**
5910 North Central Expressway
Suite 1560
Dallas, Texas 75206
(214) 265-1231 – Telephone
(972) 280-7634 – Fax

**ATTORNEY FOR PLAINTIFF**